# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

GEORGE PAT ALTIZER,
       *Plaintiff,*

vs.

OFFICER JOHN ROBERT
RETHERFORD (RETIRED),
in his individual capacity,
       *Defendants.*

CASE NO. 1:14 – CV – 31 – WTL – TAB

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO STRIKE DEFENDANT'S EXPERT REPORT; REQUEST TO EXCLUDE FROM TRIAL**

The Defendant's Expert Report (or "the Expert Report," or "the Report") authored by the Defendant's Expert Witness, Steven Guthrie, should be stricken from the record and should be excluded from evidentiary admission at the trial of this cause on the grounds that: 1. The Defendant's Expert Report contains factually untrue, misleading, and inflammatory statements, in specific part and taken as a whole, such that the Report's probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, and would be reasonably certain to mislead a jury. See Fed. R. Evid. 403; and 2. Anticipated Expert Testimony based upon the factually untrue, misleading, and inflammatory statements contained within the Expert Report would violate Federal Rule of Evidence 702(b),(d), and the principles set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), in specific part and/or taken as a whole, and should therefore be excluded from the jury at the trial of this cause.

MEMORANDUM

I.   *The Expert's Report Misstates and Relies upon Wholly Unsupported Events and therefore Should be Excluded under Fed. R. Evid. 403*

Federal Rule of Evidence 403 provides a district court with discretion to exclude evidence where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *Thompson v. City of Chicago*, 472 F. 3d 444, 456 (7th Cir. 2006).  Evidence is unfairly prejudicial if it creates "an undue tendency to suggest decision on an improper basis. . . *Sherrod v. Berry*, 856 F.2d 802, 814 (7th Cir. 1988). Expert testimony, even if otherwise admissible under Rule 702, may nonetheless be excluded under Rule 403 if its probative value is outweighed by the danger of unfair prejudice. *United States v. Brown*, 7 F.3d 648, 654 (7th Cir. 1993). "Evidence is considered unfairly prejudicial, not merely because it damages the opposing party's case, but also because its admission makes it likely that the jury will be induced to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented .... ." *United States v. Connelly*, 874 F.2d 412, 418 (7th Cir. 1989) (citing *Young v. Rabideau*, 821 F. 2d 373, 377 (7th Cir. 1987)).

1. In the Expert's Report at page 3, Steven D. Guthrie (or "Guthrie") writes: "Officer Irvin stated in his deposition that they were dispatched to the above location reference a male subject outside punching a van ... {pg 12 lines 23-24}."  However, the deposition of Officer Irvin (or "Irvin") at page 12, lines 23-24 contains no such reference. Irvin Dep. at 12, lines 23-24.  Next, Guthrie proclaims that "In speaking to George Altizer, Officer Irvin stated in his deposition that George Altizer was somewhat belligerent and intoxicated when he talked to him inside the house ... {Pg 13 lines 4 -5}"

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO STRIKE
DEFENDANT'S EXPERT REPORT; REQUEST TO EXCLUDE FROM TRIAL

and he was unsteady on his feet, had glossy and bloodshot eyes and he was irritated ... {Pg 13 lines l6-l7}." However, Officer Irvin's deposition at page 13, lines 4-5 discusses the subject of the physical location of Officer Edwards in relative position to Irvin, and does not even mention Plaintiff Altizer. Irvin Dep. at 13, lines 4-5.

2.      Next, Guthrie makes the inflammatory highly presumptive statement that "Officer Edwards stated she spoke to Jamie Altizer after Officer Irvin talked to George Altizer and Jamie Altizer stated that George was intoxicated and got into an argument earlier with their daughter's boyfriend which was the reason George was out of control .. {Pg 18 lines 5-10}."  Instead, Officer Edwards' (or "Edwards") deposition at page 18, lines 5-10 relates to the subject of Plaintiff Altizer becoming sick, and does not make reference to any argument or person being out of control.  Even standing alone, it is inflammatory for Guthrie to issue a report or testify to a jury that ". . . George was intoxicated . . . and out of control."  In fact, George Altizer was suffering from a medical emergency due to alcohol mixing with his heart medications. George Altizer Dep. at 10, lines 22-25; 11, lines 1-13.  In fact, no evidence exists in the record pointing to George Altizer's level of sobriety or level of intoxication.  Therefore, the statement that ". . . George was intoxicated. . . and out of control" should be stricken and excluded entirely from evidentiary admission.

3.      On page 3, ¶2 of the Expert's Report, Guthrie makes a finding, without adequate factual support, of "verbal noncompliance" in the moments before George Altizer suffered a loss of consciousness and fell to the ground.  Presumably, Guthrie makes this assertion on the sole basis that George Altizer was still standing in the kitchen after he had agreed to go to his bedroom.  However, George Altizer was merely

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO STRIKE
DEFENDANT'S EXPERT REPORT; REQUEST TO EXCLUDE FROM TRIAL

moments away from suffering a medical emergency that required an ambulance transport to Reid Hospital.  Therefore, it is highly inflammatory and highly prejudicial for expert Guthrie to allege that George Altizer was verbally noncompliant when this Plaintiff, a forty-nine year old heart patient, was but moments away from a collapse to the floor.

4.    In the Expert's Report at page 3-4, the last sentence on page 3 alleges: "Once enroute to the hospital, according to the ambulance personnel riding in back with George Altizer; George was still acting belligerent by screaming obscenities and also allegedly tried to hit the EMT-Paramedic ... {verbal noncompliance, uncooperative, perception of threat & actively aggressive}."  The Report goes on to recklessly label Altizer as being "very combative" while in the ambulance. See Report, Ex. A at 4. There is no support in the Expert's Report for these conclusory allegations, nor in the record itself.  Furthermore, no sworn, non-hearsay statement of any witness lends support to these baseless allegations, and the Defendant has failed to produce in discovery any evidence or reliable statements to indicate otherwise.  Although Officer Irvin alleged that Altizer "tried to take a swing at the staff member in the back of the ambulance," Irvin dep. at 15, line 25, Irvin did not personally observe this firsthand, because Irvin was not inside the ambulance when this alleged even occurred.  This is evidenced by the fact that Irvin was required to *enter* the ambulance, Irvin dep. at 15, lines 13-17, after the ambulance came to a stop due to the alleged ambulance driver's complaint regarding Altizer's non-cooperation at that time.  The Narrative of the Rural Metro

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO STRIKE DEFENDANT'S EXPERT REPORT; REQUEST TO EXCLUDE FROM TRIAL

Ambulance Report[1] (or "Ambulance Narrative") at page 4 contains a full description of all events related to the ambulance. See Pl.'s Ex. C at 4. The Ambulance Narrative makes no mention regarding Altizer trying to strike any person inside the ambulance. Even if such an incident had occurred, it would constitute a highly improbable omission within the Narrative.   At best, the record *only* reflects that George Altizer became uncooperative in the ambulance and tried to loosen the restraints to his legs and body. Pl.'s Ex. C at 4.   Furthermore, there is no reliable evidence or sworn statement that Altizer attempted to strike any person or that he screamed "obscenities."   There is also nothing to indicate that Altizer was "very combative," except for Officer Edwards' flawed understanding of the word "combative," which Edwards demonstrated in her deposition as follows:

> "Q. Was [Altizer] combative at that point [when placed inside the ambulance]?
> A. Yes.
> Q. In what way?
> A. He was stating that it was against his religion and he didn't want to go to the hospital.  We had talked to him, he had calmed down, and then he got into the ambulance."

Edwards dep. at 18, lines 17-23.  Despite Edwards' opinion, see above, that Altizer was being combative because it was against his religion and he didn't want to go to the hospital, Altizer was not "combative," much less "very combative" as prejudicially asserted by Guthrie.  And Officer Irvin further confirmed in his deposition that Altizer *never* became combative, at least until the time Officer Retherford – the third officer – arrived at Reid hospital, which was after the ambulance ride:

---

[1] The Narrative was previously marked and entered into evidence as Plaintiff's Ex. D in Plaintiffs' Response to Defendants' Motion for Summary Judgment.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO STRIKE DEFENDANT'S EXPERT REPORT; REQUEST TO EXCLUDE FROM TRIAL

1

"Q. Is there any reason you didn't call for more backup?
A. I didn't feel we needed it.

2

Q. Did you feel everything was sufficient from a control standpoint with only two officers?

3

A. [Altizer] didn't become combative until we had three officers there."

4

Irvin dep. at 27, lines 3-9.

5

6

Therefore, any statements in the Report opining that Altizer was causing "perception of threat & actively aggressive" are factually unfounded, inflammatory,

7

and highly prejudicial.  This Court should summarily strike and exclude from trial the

8

Expert Report's unfounded references to Plaintiff Altizer a.) "tak[ing] a swing," in the

9

ambulance b.) creating a "perception of threat," in the ambulance c.) being "actively

10

aggressive," d.) being "combative," or d.) communicating "obscenities."

11

5.     Next at page 4, ¶2 of the Expert Report, Guthrie makes a loose and fast

12

determination that Altizer was "actively resisting," by stating as follows:  "On arrival at

13

Reid Hospital, as George Altizer was being taken inside the emergency room he was

14

acting irate and was screaming very loudly and was told to be quiet several times but

15

refused ... {verbal noncompliance, uncooperative & actively resisting}."  Plaintiff is at a

16

total loss for how Guthrie can logically make the determination that Mr. Altizer, while

17

being taken inside the emergency room, was "actively resisting."  Indeed, Altizer had

18

been physically bound at the feet, waist, and hands for at least an estimated fifteen (15)

19

minutes, since the officers had previously imposed their chosen arsenal of restraints to

20

Mr. Altizer while inside the Rural Metro ambulance.  Irvin's deposition confirms these

21

facts entirely:

22

23

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO STRIKE
DEFENDANT'S EXPERT REPORT; REQUEST TO EXCLUDE FROM TRIAL

1    "Q. Can you describe if there were any restraints on Mr. Altizer
         when you opened the ambulance[2]?
2    A.  He had the seatbelt restraints that the cot uses.
     Q.  Is that all?
3    A.  Yes.
     Q.  So his legs were free?
4    A.  There is a restraint that goes across the legs that is part of the cot
         itself.
5    Q.  So is it fair to say there was a strap across the legs - -
     A.  Yes.
6    Q.  And there was also a strap across the waist?
     A.  Yes.
7    Q.  And his arms were free?
     A.  Yes.
8    * * * "

Irvin dep. at 16, lines 2-16.
9

10   "Q.  And so did you handcuff him at that point?
      A.  Yes."

11
Irvin dep. at 18, lines 7-8.

12   "Q.  How long does it take to get from where the ambulance had
          stopped to Reid Hospital that night, how much time elapsed?
13    A.  I don't - - I'm not sure.
          * * *
14    Q.  What would you estimate?
      A.  I'm estimating 15 minutes maybe. I'm not real sure."
15

16   Irvin dep. at 18, lines 7-8.  After the ambulance ride, and as Mr. Altizer was being taken

17   inside the emergency room, there is no evidence or reliable statement that Altizer's

18   restraints were removed until *well after* Altizer was fully situation inside Emergency

19   Room Three.  It is factually unfounded and highly inflammatory for Guthrie to ignore

20   the facts and instead represent and imply in its filed Report that Altizer was actively

21   resisting while being transported from the ambulance to the Reid Hospital emergency

22   _____
     [2] The line of questioning related to the point in time "after the ambulance pulled over and stopped,"
23       while *en route* to Reid Hospital. See Irvin dep. at 15, line 19.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO STRIKE
DEFENDANT'S EXPERT REPORT; REQUEST TO EXCLUDE FROM TRIAL

1 room.   All references to Mr. Altizer "actively resisting" before entering the Reid

2 Hospital emergency room should be stricken and excluded.

3      6.      The next portion of the Expert's Report presumes as true the self-serving

4 statement of Defendant Officer John Robert Retherford (or "Retherford"), wherein the

5 Report at page 4, ¶2 states that "George rolled onto his left side and kick[sic] the male

6 nurse ... Derrick Johnson ... {verbal noncompliance, uncooperative, perception of threat

7 & actively aggressive}, causing him to travel three to four feet and landing against the

8 wall ... {Pg 9 lines 18-25 & Pg. 10 lines 1-2}."   However, the Court should not be

9 surprised to learn that the Report failed to square with Derrick Johnson's own

10 deposition testimony.  In fact, the Expert Report *failed to even consider Derrick Johnson's*

11 *deposition testimony*. See Expert Report at 1-2.  Derrick Johnson never testified that the

12 kick caused him to travel any distance, whatsoever.  In his own words, Derrick Johnson

13 comprehensively described "the kick" as follows:

14      "A. It did not hurt bad. But, yes, I did feel it.  I did get kicked."
        Q. Sure.

15      A. I mean, it's not the hardest hit I've ever taken from like being a
           kid and playing or anything, but, yes, I did notice getting

16         kicked.
        Q. Sure. Okay. Can you describe the pain intensity?

17      A. On a scale of zero to 10, with 10 being the worst pain ever that
           you could ever imagine, I would say a 4."

18 Johnson dep. at 11, lines 19-25; 12, lines 1-3.

19      "Q. Were you bruised at all?

20      A. There was a mark on there.
        Q. How big was the mark?

21      A. I would say the size of a half dollar.
        Q. What part of the boot did he kick with?

22      A. The toe."

23

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO STRIKE
DEFENDANT'S EXPERT REPORT; REQUEST TO EXCLUDE FROM TRIAL

Johnson dep. at 35, lines 1-6.  Absent from Nurse Johnson's description of the kick was anything about Johnson being kicked with enough force "to travel three to four feet and landing against the wall."  Not *one single other witness* observed this level of activity and no other evidence establishes it as fact.   In summary, Defendant Retherford's exaggeration of Altizer's kick was a knowing misrepresentation from an interested Defendant in a civil action, and which was hastily adopted by an expert witness void from meaningful reflection of all sworn statements and reliable evidence.  Accordingly, the inflammatory and intentionally unsupported exaggeration that Altizer's kick caused Nurse Johnson "to travel three to four feet and [land] against the wall" should be stricken and excluded.

7.      Next, on page 4-5 of the Expert Report, Guthrie attempts to introduce a highly questionable and unverifiable series of events, narrated only by Defendant Retherford and the other two police officers, seen by no one else, presumably to justify the detestable actions of Defendant Retherford after the fact.  In short, Guthrie's Report attempts to weave together an epilogue to Retherford's use of excessive force whereby this forty-nine year old, 160-pound, now-bloodied and broken, three-time heart patient, who was just knocked unconscious by a 250-pound Retherford, and restraints applied to every foot, waist, and hand while laying supine on his hospital bed, continues to present a physical threat to three trained police officers – officers who never once deemed it necessary to call for additional backup. Irvin dep. at 27, lines 3-5.  Page 4-5 of the Expert Report is inflammatory, untrue, and unsupported by anything other than the interested deposition testimony of Officer Edwards, including the police report Edwards authored, see Exhibit B at 5-6.  The Expert Report claims that:

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO STRIKE
DEFENDANT'S EXPERT REPORT; REQUEST TO EXCLUDE FROM TRIAL

1   "[Altizer] started to bite [Edwards] and that is when George Altizer
2   reached up and grabbed her vest and pulled her on top of him ...
    {uncooperative, perception of threat & actively aggression} ... {Pg 42 lines
3   5-11}. Officer Edwards said that George Altizer did bite her left hand.
    Officer Edwards said she was able to get free of George Altizer's grip with
4   the assistance of Officer Irvin. Officer Irvin stated that he observed Officer
    Edwards' hand near the mouth of George Altizer and he believed that
5   George was trying to bite or spit on her, so he placed a towel over George
    Altizer's mouth. Officer Irvin and Edwards told George to let go of Officer
6   Edwards ... but refused to ... {verbal noncompliance, uncooperative,
    perception of threat & active aggression}. Therefore, Officer Irvin
7   delivered two closed hand defensive strikes aiming for George Altizer's
    left Brachial Plexus Tie-in - {Shoulder} causing George Altizer to release
8   Officer Edwards."

9   Expert Report at 4-5. However, Officer Edwards was generally unreliable as a

10  historian, and only able to remember bits and pieces, Edwards dep. at 36, lines 2-

11  3. However, she could not recall Altizer ever losing consciousness, Edwards

12  dep. at 36, lines 7-25, or even anything else about Altizer's physical appearance,

13  Edwards dep. at 36, 4-6. Indeed, Edwards could have forgotten any material

14  fact. Edwards dep. at 28, lines 1-2. Accordingly, Guthrie's inclusion of Edwards'

15  statements as a basis for including the series of events after the fact is hasty,

16  unsupported, and it should be stricken an excluded due to its high risk of

17  prejudice under Fed. R. Evid. 403.

18      II.   _The Expert's Report and his Anticipated Testimony Should be Excluded under Fed._
              _R. Evid. 702_
19
20  The Plaintiff reincorporates all arguments above as if fully set forth herein.

    Federal Rule of Evidence 702 provides in relevant part:
21
22      A witness who is qualified as an expert by knowledge, skill,
        experience, training, or education may testify in the form of an
        opinion or otherwise if:
23

10

* * *

(b) the testimony is based on sufficient facts or data;

* * *

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The admission of expert testimony is governed by the framework set forth in *Daubert v. Merrell Dow Pharmaceuticals*, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).  Rule 702 and *Daubert* require the Court to determine whether proposed expert testimony is both relevant and reliable. *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 640 (7th Cir. 2003).  An experts' work is admissible only to the extent it is reasoned, uses the methods of the discipline, and is founded on data. *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000).  And when there is simply too great an analytical gap between the data and opinion proffered, such that the opinion amounts to nothing more than the *ipse dixit* of the expert, it is not an abuse of discretion under *Daubert* to exclude that testimony. *C.W. v. Textron, Inc.*, Case No. 14-3448 (7th Cir., August 26, 2015) (discussing *General Electric Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508, 66 U.S.L.W. 4036 (1997)).  The *Daubert* analysis applies to all expert testimony under Rule 702, not just scientific testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

In the Expert Report, Guthrie bases his expert opinions almost exclusively upon unfounded, unsupported, and highly inflammatory findings.  In some cases, the facts upon which those findings rest are entirely absent, and in other cases, the facts are only asserted by the police officers interested in securing a favorable outcome.  Accordingly, the Plaintiff raises his objection under Rule 702 because the expert's anticipated

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO STRIKE
DEFENDANT'S EXPERT REPORT; REQUEST TO EXCLUDE FROM TRIAL

1

2

testimony is not based on sufficient facts or data, and by extension it has caused expert Guthrie to unreliably apply the principles and methods to the facts of the case.

3

4

5

6

7

8

9

The expert testimony that Guthrie seeks to introduce will not be helpful to the jury because the expert's facts are not based on evidence. See *United States v. Winbush*, 580 F.3d 503, 510-11 (7th Cir. 2009) (citing Fed.R.Evid. 702). And by introducing certain inflammatory statements and unfounded factual allegations would amount to this witness being allowed to put an "expert gloss" on a conclusion that the jurors should draw themselves. See *United States v. York*, 572 F.3d 415, 423 (7th Cir.2009) (overruled on other grounds).

10

11

12

13

14

15

16

17

Lastly, this is a case that generally involves common, everyday experiences, such as an ambulance ride to the hospital, police interaction, and excessive use of force – all of which are experiences that jurors are fully capable of understanding from a lay perspective.  And when the testimony is about a matter of everyday experience, expert testimony is less likely to be admissible. *Florek v. Village of Mundelein, Illinois*, 649 F.3d 594 (7th Cir. 2011) citing *United States v. Hanna*, 293 F.3d 1080, 1085-86 (9th Cir. 2002). Therefore, the Court should strike all portions of the Expert's Report that is inflammatory, unfounded, and that does not pass muster under Rule 702 or *Daubert*.

18

19

20

The Plaintiff concludes by mentioning that the Expert's Report contains such a substantial number of fundamental flaws that it should be stricken in its entirety and the Plaintiff requests the same.

21

22

23

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO STRIKE
DEFENDANT'S EXPERT REPORT; REQUEST TO EXCLUDE FROM TRIAL

CONCLUSION

WHEREFORE, for the reasons set forth above, the Plaintiff respectfully requests that the Court strike the Expert's Report, in whole or in part, and that all Report's affected statements and inaccuracies be excluded from presentation to the jury at the trial of this cause.

Respectfully submitted,

/s/ Matthew L. McDaniel
Matthew L. McDaniel, Ind. No. 30386-29
137 Walnut Street
Lawrenceburg, Indiana  47025-2410
Telephone (513) 295-5127
Facsimile (812) 220-5775
Email matthew@mcdaniellaw.net
*Attorney for the Plaintiff*

CERTIFICATE OF SERVICE

I, Matthew L. McDaniel, hereby certify that on October 23, 2015 the foregoing MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO STRIKE DEFENDANT'S EXPERT REPORT; REQUEST TO EXCLUDE FROM TRIAL was served by CM/ECF to the following:

Kenneth Collier-Magar, Esq.
kenneth@cmrlawfirm.com
*Attorney for the Defendant*

/s/ Matthew L. McDaniel
Matthew L. McDaniel,
*Attorney for the Plaintiff*

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO STRIKE
DEFENDANT'S EXPERT REPORT; REQUEST TO EXCLUDE FROM TRIAL