# Altizer v. City of Richmond
# Table of Contents

**I.**  **Written Report:**
Material provided by your office............................................ 1-2
Opinion Review................................................................ 2-5
Opinion and Rational......................................................... 6-7
Circumstances/Facts.......................................................... 7-10
Summary........................................................................ 10-11
Resistance/Control Continuum............................................. 12
Synopsis of the "Threat Control Matrix................................. 13-14
Generalization Threat Control Matrix.................................... 15
Supporting Resources........................................................ 16

**II.**  **Life/work History:**
Biography...................................................................... 1
Curriculum/Resume.......................................................... 1-10
- **Continuing Education:**
  1. Criminal Justice/Law Enforcement......................... 1-3
  2. Management Training.......................................... 3
  3. Interpersonal/Social Skill Training......................... 3
  4. EMS/medical Training......................................... 3-4
  5. Formal Education.............................................. 4
- Management Background......................................... 4
- Instructor/Teaching Experience................................ 5-6
- **Use-of-Force Consultant/Expert Witness....................... 7-8**
- Board/Committee Membership.................................. 8
- Personal Data.................................................... 8-9
- Coaching Experience............................................ 9
- Professional Certification/License............................. 9-10

**III.**  **Diplomas:**
Columbia Southern University
Indiana Law Enforcement Academy – Master Instructor
Indiana Law Enforcement Academy – Basic Training
Pendleton Heights High School

**IV.**  **Fee Schedule**

# SECTION I

# WRITTEN REPORT

September 10, 2014

Kenneth Collier-Magar
211 South Ritter Avenue, Suite C
Indianapolis, Indiana 46219

**RE:**   *Altizer v. City of Richmond, et al, Officer John Robert Retherford, Officer*
*Heather Edwards and Officer Charles Irvin, in their individual capacity*
Untied States District Court
Southern District of Indiana
Indianapolis Division
Cause No:  1:14-cv-31-WTL-TAB

Dear Mr. Collier-Magar,

Per your request, I have reviewed the following materials provided by you on the following dates and
have submitted a report.

<u>July 08, 2014</u>

1.   Via Electronic Mail… from Ken Collier-Mager – June 30, 2014
2.   Via Electronic Mail… from Ken Collier-Mager – July 08, 2014
3.   Written Correspondence from Kaley Pettiford reference CD of the sally port – July 16, 2014
4.   Via Electronic Mail… from Ken Collier-Magar reference my voice mail I left on Friday, July 25, 2014
5.   Indiana Tort Claim Notice – George Pat Altizer, Claimants
6.   Defendant's Answer, Jury Demand, and Affirmative Defenses
7.   Statement Forms:

     i.   George Pat Altizer
     ii.   Jamie Annette Altizer
     iii.   Joan Newman
     iv.   David Honeycutt
     v.   Officer Charles Irvin
     vi.   Aaron Evans
     vii.   Officer Heather Evans
     viii.   Randy Rittenhouse
     ix.   Heather Barrett

    x.   Kissandra Smith

    xi.. Tanner Kinsinger

    xii. Sergeant John Retherford

    xiii. C.O. Zack Ponder

    xiv. C.O. Jason Craves

8. Richmond PD Professional Standard Unit Investigation Summary submitted by Captain Terry Hopkins

9. George Pat Altizer criminal history/record

10. Incident/Offense Report for November 14, 2012

11. Hand written incident report made by George Pat Altizer

12. Complaint file by Ms. Nancy Seal Board Member at Reid Hospital reference incident on November 14, 2012

13. Richmond PD Use of Force Review

14. Radio Communication CAD report

15. Emergency Services Physician Orders/Disposition

16. Patient Care Report and ED Flow chart

**August 30, 2014**

1. George P. Altizer deposition
2. Jamie A Altizer deposition

**September 03, 2014**

1. Heather Edwards deposition
2. Charles Irvin deposition
3. John R. Retherford deposition

**Opinion Review:**

Based on this review, I have concluded that all the Law Enforcement Officers involved in the incident: Officer John Robert Retherford, Officer Heather Edwards and Officer Charles Irvin application of force was justified and reasonable in terms of what I understand to be the circumstantial factors both known and unknown to them at the time of their encounter with George Pat Altizer on November 14, 2012 at 848 SW A Street, Richmond, IN, 47374, enroute and at Reid Hospital... 1100 Reid Parkway, Richmond, IN 47374 and at Wayne County Jail.

According to the above reports and video submitted to me for review, Officer Heather Edwards and
Officer Charles Irvin were dispatched to 848 SW A Street reference an intoxicated male who was outside
beating a van.  Officer Irvin stated in his deposition that they were dispatched to the above location
reference a male subject outside punching a van… {pg 12 lines 23-24}.  According to the police report on
officer's arrival they found the male later identified as George Altizer inside the residence at the above
location they were dispatched to.  Officers indicated in their police report that they spoke with his wife
Jamie Altizer in the kitchen where George was sitting at the table in a chair.  Jamie told the officers that
George had been drinking in addition to him taking his medication.  Jamie told the officers that George
doesn't usually drink and tonight was a rare occasion.  In speaking to George Altizer, Officer Irvin stated
in his deposition that George Altizer was somewhat belligerent and intoxicated when he talked to him
inside the house… {Pg 13 lines 4 -5} and he was unsteady on his feet, had glossy and bloodshot eyes and
he was irritated… {Pg 13 lines 16-17}.  Officer Edwards stated she spoke to Jamie Altizer after Officer
Irvin talked to George Altizer and Jamie Altizer stated that George was intoxicated and got into an
argument earlier with their daughter's boyfriend which was the reason George was out of control…
{Pg18 lines 5-10}.  Officers convinced George it would be best for him to go to his bedroom and sleep
off the alcohol… which he agreed to do.  According the police report, Jamie Altizer who went outside
when the officers were leaving stated that when their daughter's boyfriend showed up at their residence,
George was upset and an altercation took place outside between her husband and the boyfriend.  Jamie
said she was able to calm George down and get him back inside prior to officers' arrival.

While talking to Jamie Altizer outside, Officers heard a female scream from the inside of the residence.
When officers went back inside with Jamie they observed George standing in the kitchen… {*verbal
noncompliance*}.  Officer Irvin stated in his deposition that George Altizer was again highly irritated
and when they were trying to talk to him into going back to bed again he lost consciousness and fell
striking his head on the table as he continued to fall to the floor…. {Pg 15 lines 12-15}.  As officers
placed George on his side, he vomited.  Officers then advised dispatch to have Rural Metro respond.  On
Rural Metro arrival, George Altizer was conscious and sitting up.  Rural Metro personnel advised George
it would be in his best interest to be evaluated at the hospital due the high level of alcohol and his
prescribed medication he had consumed.  George was advised he wasn't under arrest.  George did agree
to go but said it was against his religion.   However, according to the police report, Jamie Altizer said that
George needed to go and she would follow the officers to the hospital.  Officer Irvin stated in his
deposition that George Altizer was belligerent when the ambulance personnel were placing him in the
ambulance… {Pg 18 lines 17-18}.  Once enroute to the hospital, according to the ambulance personnel
riding in back with George Altizer; George was still acting belligerent by screaming obscenities and also

allegedly tried to hit the EMT-Paramedic… {***verbal noncompliance, uncooperative, perception of threat & actively aggressive***}.  Rural Metro pull over on the side of the road and Officer Irvin stated in his deposition that when he got up to the ambulance George Altizer was acting belligerent, yelling and screaming and was trying to take his seatbelt off… {Pg 18 lines 20-22}.  Officer Irvin then handcuffed George Altizer to the cot for the ambulance personnel and George Altizer safety.  Officers then advised dispatch to contact Reid Hospital to advise them of George Altizer condition of being highly intoxicated and very combative.

On arrival at Reid Hospital, as George Altizer was being taken inside the emergency room he was acting irate and was screaming very loudly and was told to be quiet several times but refused… {***verbal noncompliance, uncooperative & actively resisting***}.  Sergeant Retherford stated in his deposition that he arrived at Reid Hospital to check on his officers, as he walked into the emergency room to Exam Room 3, he observed the medical staff attempting to transfer George Altizer from the ambulance gurney to the hospital bed… {Pg 8 lines 25 & Pg 9 lines 1-2}.  Sergeant Retherford stated he observed both of his officers in the process of placing handcuffs on George Altizer and that Officer Irvin was able to restrain the right arm but Officer Edwards was having trouble gaining control of George Altizer's left arm as he was squirming in the bed… {***verbal noncompliance, uncooperative, perception of threat & actively resisting***}.  Sergeant Retherford also stated in his deposition he no sooner got the words out of his mouth to Officer Irvin, we needed to get the boots off of George Altizer that George rolled onto his left side and kick the male nurse… Derrick Johnson… {***verbal noncompliance, uncooperative, perception of threat & actively aggressive***}, causing him to travel three to four feet and landing against the wall… {Pg 9 lines 18-25 & Pg. 10 lines 1-2}.  Sergeant Retherford stated George Altizer continued to yell, be argumentative and combative… {***uncooperative, perception of threat & actively resisting***}.  Sergeant Retherford stated that Officer Irvin laid across George Altizer's legs in attempt to gain control of them as he grabbed a handful of hair to pull his head back down onto the bed to control his head.  Sergeant Retherford stated during this time, Officer Edwards was still trying to handcuff George Altizer's left arm to the bed.  Sergeant Retherford stated he delivered three to four defensive strikes to George Altizer's forehead; at which time officers were able to gain control of George Altizer… {Pg 10 lines 7-16}.  Sergeant Retherford stated he did not deliver any more defensive strikes once they had restrained both legs and arms of George Altizer to the bed.

Officers stayed with George Altizer as he was being taken to get a CT scan by Reid Hospital personnel.  Officer Edwards stated in her deposition that George Altizer was screaming going down the hallway… {Pg 42 lines 3-4}.  Officer Edwards said she leaned over and told him several times to be quiet and when

he would not stop yelling she placed her hand over his mouth and he started to bite her and that is when George Altizer reached up and grabbed her vest and pulled her on top of him… {*uncooperative, perception of threat & actively aggression*}…{Pg 42 lines 5-11}.  Officer Edwards said that George Altizer did bite her left hand.  Officer Edwards said she was able to get free of George Altizer's grip with the assistance of Officer Irvin.   Officer Irvin stated that he observed Officer Edwards' hand near the mouth of George Altizer and he believed that George was trying to bite or spit on her, so he placed a towel over George Altizer's mouth.  Officer Irvin and Edwards told George to let go of Officer Edwards… but refused to… {*verbal noncompliance, uncooperative, perception of threat & active aggression*}.  Therefore, Officer Irvin delivered two closed hand defensive strikes aiming for George Altizer's left Brachial Plexus Tie-in – {Shoulder}causing George Altizer to release Officer Edwards.  [It should be noted that Sergeant Retherford was assisting by applying pressure to the Mandibular Angle… located behind the ear lobe].  Officer Irvin did not deliver any additional defensive strikes and Sergeant Retherford stopped the pressure point once George released Officer Edwards.

According to the police report, officers escorted George back to his Exam room at which time George was placed in the Hospital hard restraints.  Officers then received the medical release paperwork from Dr. Smith who stated George Altizer was being released.  When officers went back to Exam room 3 to get George Altizer and transport him to jail, they found that George was able to pull his right hand free from the hard restraint.   Officer Irvin then secured the right arm back to the bed railing with handcuffs.  The Hospital staff removed George Altizer's legs from the leg restraints and Officer Irvin placed him into leg shackles.  As Officer Irvin removed the handcuff from the bed rail that was attached to his right arm, the suspect rolled over and attempted to punch Officer Edwards.  Officer Irvin was able to pull George's right arm back behind his back and handcuff it to his left arm before the Hospital hard restraints were removed.

Another issue was when officers told George Altizer to stand up and he refused.  As Officer Edwards and Irvin picked George up his body became limp and officers had to carry him to the police cruiser. Officers Edward and Irvin had to place George Altizer in the back seat of the police cruiser.  This was accomplished by picking him up and placing him in the backseat on his side and then pushing him into the police cruiser.  At the Wayne County Jail, due to the fact he was still in an unconscious state and/or unwilling to move, Officers Edwards grabbed the leg shackles that were on George Atlizer's ankles and pulled him out far enough where she could grab him around the waist was place him in the chair with the assistances of two Wayne County Correction Officers.

**Opinion and Rationale:**

It is important to understand that police officers usually have very little time to assess and respond to threats and/or perceived threats. Some of the inherent dangers and limitations are in the following areas: *(1) insufficient time to react and respond* – action will beat reaction; *(2)* **Combat Anxiety & Survival Stress –** Officers' physical, mental, and emotional capabilities may deteriorate during tense, uncertain, and/or rapidly evolving circumstances; *(3) limited means* – police officers may not have the ability or the means to immediately stop a person's threatening actions; *(4) No or limited control over the event or threatening person* –The *"Unexpected"* can play a significant role in every day event. Therefore all the training, preparation, skill and planning that officers receive can lessen the effects of the *"Unexpected"*, but these effects cannot be entirely eliminated.

In Graham v. Connor[1], the U.S. Supreme Court's decision has made allowances for these limitations in use of force. In their decision, when judging the reasonableness of police officers an objective standard will be used and the subjective thoughts of the officers are irrelevant. Furthermore, under the Fourth Amendment *"objective reasonableness"* standard, the appropriateness of an officer's decision to use force will be based upon the *"Totality of Circumstances"* as reasonably perceived by the officer in the moment the force was used. Therefore, the court cannot use the benefit of 20/20 vision of hindsight[2], but must consider the "reasonableness" of a particular use of force be judged from the perspective of a reasonable officer on the scene, with the understanding that police officers are often forced to make split-second judgments that are tense, uncertain and circumstances that are rapidly evolving.[3] The Graham Court has held that *"the test of reasonableness"* under the Fourth Amendment is not capable of precise definition or mechanical application."[4] As a result, in determining whether an officer's use of force was justified under the fourth Amendment, objective facts must be filtered through the lens of the officer's perceptions at the time of the incident in question. This takes away *"arm-chair quarterbacking" which is* the reasonableness of actions with the benefit of 20/20 hindsight and limits the need for the "people-in-authority" to sort through conflicting versions of the *"actual"* facts, and allows them to focus on what the officer reasonably perceived.

---

[1] Graham v. Conner, 490 U.S 386,396, 104 L. Ed.2d 443, 109 S. Ct. 1865 (1989). Graham set the standard for law enforcement use of force upon seized free persons. Graham stated that under the Fourth Amendment, to the U.S. Constitution, an officer's use of force upon a seized person must be "objectively reasonable."
[2] Graham, 490 U.S., at 396-97
[3] Graham, 490 U.S., at 396
[4] Graham, 490 U.S., at 396, citing Bell v. Wolfish, 441 U.S. 520, at 559, 99 S. Ct. 1861, 60  L.Ed.2d  447 (1979)

6

Furthermore, since the early 1980's, the U.S. Supreme Court has recognized that the risk of harm to police officers and others is minimized if police officers routinely exercise unquestioned command of the situation. It is better to act forcefully enough at the onset to establish immediate and effective control rather than risk the perils to both the officer and suspect. "Attorney Robert Thomas said that the Fourth Amendment requires that attention be given to the facts and circumstances confronting the officer(s), considered from the perspective of a reasonable officer on the scene". Attorney Randy Means concurs stating… "The federal constitution standard does not require an inquiry into whether the force or incident could have been avoided or minimized, if the officer(s) had somehow done better or differently. It only requires that the officers' actions be 'reasonable' under the prevailing circumstances." Therefore, it is imperative that officer(s) adopt strategies and techniques that reasonably decrease the uncertainty that control will be quickly established. Reasonableness under "The Fourth Amendment" does not require an officer to use the least intrusive level of force, only what is reasonable.

**The circumstances and/or facts existing from the material provided to me to review on this incident and my responses:**

1. According to the documented submitted to me for review, officers were sent to 848 SW A Street, Richmond, IN, 47374 on November 14, 2014. While investigating the incident, officers observed George Altizer fall in his kitchen striking his face and head on the kitchen table. Officers then had dispatch contact Rural Metro to come to their location and check out George Altizer. Even though it was against his beliefs, George Altizer agreed to be taken to Reid Hospital for an evaluation. George Altizer was highly intoxicated along with taking prescribed medication. While enroute to Reid Hospital he became very belligerent and tried to hit the EMT-Paramedic. The Rural Metro ambulance pulled over and stopped so officers could come inside the ambulance and handcuff Mr. Altizer for safety precaution. Once at the Reid Hospital Emergency Room, George became more irate and refused to settle down after being told to by the officers.

   Response – George Altizer was acting very belligerent and combative not only when being placed in the ambulance but also enroute to Reid Hospital and while he was being treated and evaluated in the emergency room. It was only a few blocks away from leaving George Altizer's residence when Rural Metro pulled over and as Officer Irvin got up to the back of the ambulance he observed that George Altizer was acting belligerent and yelling and was trying to take his seatbelt off. Officer Irvin handcuffed George to the gurney for his and the medical personnel safety. George Altizer while being transferred from the ambulance gurney to the emergency

room bed kicked Derek Johnson – RN.  Sergeant Retherford who had arrived to check    on his officers observed that they were having trouble restraining George Altizer and saw the male nurse, Derrick Johnson get kicked.  Sergeant Retherford assisted with delivering three to four defensive strikes to George Altizer's head/face to stop George Altizer from actively resisting so officers and security personnel could restrain his legs and left arm to the hospital bed.  Sergeant Retherford did not deliver any more defensive strikes once George Altizer arms and legs were in restraints.

*It should be noted that the fractured finger and wrist that George Altizer is claiming could have been caused by George punching the van prior to officers' arrival at his residence.  Furthermore, when George Altizer became unconscious and fell at his residence striking his face and head on the kitchen table that could have contributor to some of his injuries he sustained to his face and head… fractured nose.*

2.  As George Altizer was being taken to get a CT scan, he was acting belligerent and yelling while being taken down the hallway.  Officer Edwards told him several time to be quiet and when he refused, she placed her left hand over his mouth.  Officer Edwards stated that George bit her left hand and also reached from his hospital bed and pulled her on top of him. Officer Edwards said that George refused to let go of her. Also present at the time was Officer Irwin and Sergeant Retherford.

Response - George Altizer refused to release Officer Edwards after being told to several times.  Officer Irvin believed that George Altizer was trying to spit or bite Officer Edwards, which he did bite her left hand… {Pg 42 line 13}, so Officer Irvin placed a towel over George Altizer's face and responded by delivering defensive strikes to the Brachial Plexus Tie-in, as Sergeant Retherford was applying a pressure point to the Mandibular Angle of George Altizer until he released Officer Edwards.

*** It also should be noted that George Altizer was given Haldol and Ativan to calm him down but it was still inadequate to get him tranquilized enough to lie still for the scan so he had to be given Versed according to his medical chart***

*I based my opinion on evaluating the resistance and the force to control that resistance by using the "Resistance/Control Continuum" – {refer to page 10 for details and the*

8

*"Threat Control Matrix"- {refer to pages 11-13} for details.*

*In both {1 &2} the above incidents using the "Resistance/Control Continuum;*
- *George Altizer "Level of Resistance" ranged from Verbal Noncompliance, to Defensive Resistance and escalated to Active Aggression.*
- *Sergeant Retherford and Officer Irvin "Level of Control" to control George Altizer resistance and to get compliance from George Altizer ranged from Verbal Direction, Soft Empty Hand Control to Hard Empty Hand Control.*

*\*\*\* It should be noted that George Altizer Active Aggression and the Officers' level of control to control the Active Aggression was on the same level of the Resistance/Control Continuum \*\*\**

*In both {1 & 2 the above incident using the "Threat Control Matrix"*

- *Circumstantial Variables – Wearing Boots, Proximity of threat, Unwillingness to comply, Alcohol & Drugs, Location/Environment*
- *Subject's Actions – Body language,  Failure to follow verbal commands, Actively resisting, kicking a male nurse*
- *Perceived Threat – Both Circumstantial Variables and Subject's Actions are elements that form the perception of threat for an officer.*
- *Officer's Options – The urgency of an officer's response in accomplishing control are responses of the product of an officer's reasonable perception of threat.  The force used by officers was Strength/leverage, Pressure Points, and Strikes and was in response to George Altizer's resistance.*

*In considering the above four elements of the "Threat Control Matrix", it is my opinion that Sergeant Retherford and Officer Irwin force used was in response to George Altizer's resistance and was reasonable based on their "Threat Perception" and the "totality of the circumstances".  George Altizer was not complying with verbal commands, was combative/actively resisting, as officers and medical personnel were in close proximity.*

*\*\*\* It should be noted that a male nurse had already been kicked – {active aggression} by George Altizer.  Jamie Altizer, George's wife indicated that in her deposition she asked the male*

*nurse... Derrick Johnson if George Altizer kicked him and he said yes... "I got bruised but I ain't hurt"... {Pg 21 lines 10-12}. Therefore, it was necessary that officers and medical personnel secure and restrain George Altizer's legs and arms for their and George Altizer safety\*\*\**

3. The other issue was transporting George Altizer from Reid Hospital to the Wayne County Jail. First of all, it is difficult trying to move a person who is in an unconscious state and/or a person unwilling to move and even more difficult trying to place them in the backseat of a police cruiser and then removing that person from the backseat.

Response - After reviewing the documentation submitted to me, it is my opinion that the officers' actions were reasonable, as the documentation that I reviewed did not indicate that George Altizer sustained any serious injuries from the police officers placing him in and taking him out of the police cruiser.

## Summary:

What is relevant is whether the "***totality of the circumstances***" justified the force used by Sergeant Retherford, Officer Irvin and Officer Edwards in gaining control of George Altizer on November 14, 2012 in being transported by Rural Metro to Reid Hospital ER, at the Reid Hospital Emergency Room, being taken to get a CT scan, and in transporting him from Reid Hospital ER to the Wayne County Jail in the police cruiser.

One must consider that the "Fourth Amendment" requires that attention be given to the facts and circumstances confronting officer(s) at the scene, considered from the perspective of a reasonable officer on the scene. The analysis of reasonableness must take in account the severity of the crime; whether the suspect poses an immediate threat to the safety of the officers or others; whether the suspect is actively resisting arrest, and/or attempting to evade arrest by flight.

I came to my conclusion in considering the "***totality of the circumstances***", which consisted of officers' knowledge/experience, training in law enforcement, perception of threat, their abilities, and available equipment; along with the circumstantial variables and the subject's action. Therefore after reviewing all the documentation, it indicated that George Altizer was combative, actively resisting and

basically out of control; and did pose an immediate threat to the police officers, Rural Metro personnel, and Reid Hospital personnel safety by kicking or striking them when they were trying to transport him from the gurney to the ER bed for medical treatment.

During this time, George Altizer did kick Derek Johnson... the RN and continued to actively resist even after being told several time to stop resisting until his legs and arms were restrained to the emergency bed. In addition, George Altizer also was able to bite Officer Edwards' left hand and grab her body armor and pull her on top of him while being taken to get a CT scan.   Officer Irvin had to deliver defensive strikes to George Altizer's left Brachial Plexus Tie-in… (Shoulder), along with Sergeant Retherford applying a pressure point to the Mandibular Angle to get him to release Officer Edwards.

Therefore, it is my opinion that the incident was definitely tense and uncertain.  Furthermore, for the officers to gain control of the situation that posed a threat to the officers, Rural Metro personnel, and the Reid Hospital personnel; Sergeant Retherford, Officer Irvin and Officer Edwards responded to George Altizer's resistance in an appropriate manner both in their choices of control method and their commensurate de-escalation as control was established.

My opinions may be added to or amended upon review of additional information.

Respectfully submitted,

Steven D. Guthrie

11

# "Resistance/Control Continuum"

The Resistance/Control Continuum also know as the "Force Continuum is designed on the philosophy of the One-Plus-One Theory of force escalation.  Like most "Force Continuum the Resistance/Control Continuum is divided into two categories: *Level of Resistance*, describing threatening, resistive or assaultive behavior of a subject. The *Level of Control* explains the escalating methods of a subject or subjects control by the officer.

Level of Resistance:

1. *Psychological Intimidation* – Nonverbal cues indication subject's attitude, appearance, and physical readiness.  (blank stare, clinching of fists, tightening of jaw muscles, etc.)

2. *Verbal Noncompliance* - verbal response indicating subject unwillingness to obey commands of detainment, arrest, or to stop unlawful or dangerous behavior intent ("you are going to have to take me")

3. *Passive Resistance* - physical actions that do not affect the officers attempt to control (stiffening of the body)

4. *Defensive Resistance* - actions to prevent officer control, but not intended to harm the officer (pushing or pulling away)

5. *Active Aggression* - physically assaulting the officer or another person. (advancing, challenging, punching, kicking, grabbing, wrestling, etc.)

6. *Deadly Force Assault* - officers or another person life is in jeopardy (suspect possesses the means and ability to take a life)

Level of Control:

1. *Officer Presence* – identification of police authority, either by uniform or verbal

2. *Body Language*

3. *Verbal Communication*

4. *Empty Hand Control*
    - Soft /Hard
        - Soft – techniques that present little chance of injuries such as joint locks, pressure points, & etc.
        - Hard – techniques that have a high probability of causing injury such as punches, kicks, elbow strikes.

5. *Intermediate Weapons* – is control of any weapon/object that is not part of the human body to control resistance or an assault.

6. *Lethal Force* – any force used by the officer that may result in great bodily harm or the loss of human life.

# "Synopsis of the "Threat Control Matrix"

The Threat Matrix is a graphical representation that illustrates an officer's response to resistance. The Threat Matrix was introduced by Lt. Robert Black and has been incorporated into the ILEA Physical Tactics lecture and training. The reasons for incorporation were based on scientific evidence that suggests that human perceptions are greatly affected by the use of words; consequently, behavioral responses are directed by those perceptions. There is now substantial evidence that police officers' perceptions have been affected by words and phrases that we have used to soften the reality of fighting and police use of force, but which tend to discourage preemptive action.

Some of the top use of force research suggests that the various "force continuum" models that are popular as a trainer's tool may be one significant factor, although not the only factor, which exacerbates the natural tendency for officers to be reluctant to use force preemptively.

In Graham v. Connor, the Court's insightful statement " … the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application" was meant to illustrate the notion that every situation involving the use of force by police is unique and that it is impossible to define specific applications of force options. In other words, the law recognizes that there cannot be clear-cut rules regarding what force an officer may use. Nonetheless, using the "force continuum" may be precisely the mechanical application that the Court denounced for the use by lower courts, because it is inconsistent with the concept of reasonableness … keeping in mind that the concept must be viewed according to the real "tense, uncertain and rapidly evolving" world of physical conflict.

The matrix considers the following elements when reviewing use of force encounters:

1. *"Circumstantial Variables"* are looked at first rather than actions first. This is because information both known and unknown to the officer has a great deal to do with how a subject's actions may ultimately be interpreted.

2. The next area for the officer to consider is the *"subject's actions"*. Typically, resistance is in the form of a multitude of actions in which the whole is greater than the sum of the parts. The model allows an officer to have a visual impression of the concurrent and dynamic nature of their occurrences. It also forces a look at the subject's actions before a discussion of the officer's actions. It is always better to clarify what an officer is dealing with before consideration of any

type or "degree" of force that could be subjectively assessed based only on the physics of a particular action.

3. The next consideration is the ***"perceived threat"***, the border between *"circumstantial variables"* and *"subject's action's"*. Both of these elements form the perception of threat, not any element by itself. This is one of the most important factors in determining reasonableness in use of force encounters. An officer's responses are a product of his/her perceptions of the threat posed. *"Threat perception"* is the cornerstone of use of force training and use of force review. It can become clear at this point that there may be different perceptions from different individuals; second, that there may be a number of reasonable perceptions; and third, assessing a threat *too low is just as unreasonable as assessing/addressing it too high*. Factors such as statistics and known history in law enforcement injuries/deaths, scientific studies, research, reports, personal experience, and training all can be brought into this matrix element to illustrate a reasonable or unreasonable perception of the threat posed at this point.

4. Next is ***"officer's options"*** … the urgency of an officer's response in accomplishing control are responses of the product of an officer's reasonable perception of threat and that the use of force must be preemptive, and/or preventative in terms of further resistance from the subject(s).

14

# GENERALIZATION

## Threat Control Matrix

**Circumstantial Variables:**

Age of officer(s)

Age of subject(s)

Availability of back-up

Availability of cover

Department policy

Exhaustion level

Visibility – time of day

Extreme noise

Combat Anxiety/Survival Stress

Proximity of threat

Type of call

Hostile crowd

History of violence

Willingness to comply

Number of officers/subjects

Alcohol/Drugs

**Subject's Actions:**

Body language

Failure to follow verbal commands

Verbal threats

Verbal threats – non-compliance

Running away

Closing distance

Actively resisting

Furtive movements

**Perceived Threat Level:**

Low - Blue

██████

Orange

High - Red

**Officer's Options:**

Verbal Commands

Joint manipulations/pressure points

Foot sweeps

Strength/leverage techniques

Grappling

Strikes with natural weapons

Grappling

Neck restraints

Employ less than lethal weapons

Employ canine

Employ firearms

Pit maneuver/Road blocks

# SUPPORTING RESOURCES

A review of the following resources provided information to support my opinions and may be referred to in any subsequent testimony in this case.

## PPCT DEFENSIVE TACTICS INSTRUCTOR MANUAL

Bruce Siddle
PPCT Management System, Inc.
7645 Magna Drive
Second Floor
Belleville, IL 62223

## POLICE AND SECURITY NEWS

The Information Source For Law Enforcement and Homeland Security
January/February 2006
Vol.22 Issue 1

## LIABILITY ASSESSMENT & AWARENESS INTERNATTIONAL, INC
www.laaw.com

## STREET SURVIVAL SEMINAR WOORKBOOK 2005

The Street Survival
The Tactical Edge
Calibre Press, Inc.
4101 International parkway
Carrollton, Texas 75007
(800) 323-0037

## PHYSICAL TACTICS

Indiana Law Enforcement Academy Basic Training Manual
Robert H. Black
ILEA
P.O. Box 313
Plainfield, IN 46168
317-839-5191

## ESSENTIAL CASE LAW FOR POLICING AMERICA, SECOND EDITION

James R. Peva, Associate of Public and Environment Affairs
Indiana University
Richard P. Good, Jr. Executive Director
Indiana Prosecuting Attorneys Council
Charles N. Braun II,
Indiana Law Enforcement Academy
Publisher-Graphics LTD
217 S. Belmont Ave., Suite F
Indianapolis, IN 46222

# SECTION II

## Life/Work History
### Biography
### Curriculum Vita/Resume

# Steven D. Guthrie
# Biography

**Indiana Law Enforcement Academy**
**Master Instructor,**

***Steven D. Guthrie...*** the Founder of S&G Consulting and has over 34 years of law enforcement experience.  Lieutenant Guthrie served twenty-four and half (24 ½) years with the Anderson Police Department prior to joining the staff at the Indiana Law Enforcement Academy in April of 2003.  While serving at the Anderson Police Department, he spent ten {10} years in the Patrol Division, eight {8} years as the Training Coordinator and six and an half {6 ½} years as the Assistant Chief over the Non-Uniform Division.

In addition, Lieutenant Guthrie was part of the Anderson Police Department S.W.A.T team for twelve {12} years, a Firearm/Physical Tactics Instructor for fifteen {15} years and was one of the Fitness and Wellness Instructors on the department.  Lieutenant Guthrie was a graduate of the fifty-third (53rd) Basic Session of the Indiana Law Enforcement Academy.

*Lieutenant Guthrie currently holds or has held certification as an instructor in Krav Maga Level I & IV; PPCT Defensive Tactics; Paul Whitesell; Protective Training Services Inc., Survival Tactics/Police Ground Fighting; Tony Blauer; S.P.E.A.R.S.; Rape Aggression Defense [RAD]; Scenario Based Training; Verbal Judo; Ethics Train-the-Trainer; Training Academy Armor Holdings, Oleoresin Capsicum Aerosol Projectors {OC Spray}; Taser International M26 & X26; Use-of Force Master Instructor; along with  Law Enforcement Fitness Specialist from* <u>*Cooper's Institute*</u> *and* <u>*Fit Force Fitness*</u>*.  Lieutenant Guthrie also received a Master Use of Force Instructor certification from the Police Policy Studies Council in 2006.*

Lieutenant Guthrie's primary duties at ILEA consist of instructing Physical Fitness, Police Ethics, Interpersonal Communication, Use-of-Force, and Stress; along with being one of the Officers in Charge {OIC} of the Fitness Assessment for the Basic recruits and the Police Chief Executive Training for newly appointed Police Chiefs.  Lieutenant Guthrie is also one of the EMT's on staff and is the Assistant Basic Course Commander.

Lieutenant Guthrie obtained his Master Instructor Certification in 2008, which is the highest category issued by the Indiana Law Enforcement Training Board.  Lieutenant Guthrie received his Bachelor of Science in Criminal Justice through Columbia Southern University in 2003.

Lieutenant Steven Guthrie was born in Elizabethtown, Illinois but has lived most of his life in Anderson, Indiana.  He has been married for forty-four years to his wife, Cathy and has four children and six grandchildren.

1

## Steven D. Guthrie
### Anderson, IN 46012

| | |
|---|---|
| C – 765.635.6364 | Steven_guthrie_865@comcast.net |
| W – 317.837.3252 | www.s-gconsulting.com |
| H – 765.643.8839 | Sguthrie@ilea.in.gov |

# CONTINUING EDUCATION TRAINING:

### Criminal Justice/Law Enforcement:

| | |
|---|---|
| 2013 | Emotional Survival for Law Enforcement – {12/03/2013} |
| 2013 | Emergencies Procedure |
| 2013 | Violence Interdiction – {03/13-14/2013} |
| 2013 | Active Shooter – On-line {02/14/2013} |
| 2013 | Tony Blauer Cross Fit Defense |
| 2013 | ISOA Conference in Ft. Wayne |
| 2012 | Detecting Deception – Champaign, Ill |
| 2012 | 2012 Fall Law Enforcement Conference 09/2012 |
| 2012 | Indiana BAC Datamaster Recertification – 2012-06-19 |
| 2012 | Leadership & Personal Development – Champaign, Ill |
| 2011 | In Line of Fire … FLETC Violence Against LE – 12/7/2011 |
| 2011 | Women in Law Enforcement … Lawrence PD– 11/4/2011 |
| 2011 | Use-of-Force … State/Local Law Enforcement Training Symposium –  8/9, 10, 11/2011 |
| 2011 | Use-of-Force … FLETC – 4/26-27/2011 |
| 2011 | Street Survival … Calibre Press - 3/15-16/2011 |
| 2010 | Fall Law Enforcement Conference – 9/22-23/2010 |
| 2010 | Officer Tactics – Jack Schonely – 8/13/2010 |
| 2010 | Krav Maga Instructor Certification Course Series I & IV – 7/19-23/2010 – Lexington Police Department Academy |
| 2010 | Advanced Interview and Interrogation Training – Two Day Course 7/ 8-9/2010 |
| 2010 | Recertification Breath Operator – 6/17/2010 |
| 2010 | ISOA Conference – (Krav Maga & Conflict Resolution) |
| 2010 | OIG Ethics Training – Computer-Based Training – 4/05/2010 |
| 2009 | Family Violence/Abuse for Trainers – 8/07/2009 |
| 2009 | Emergency Medicine Symposium – 5/22/2009 |
| 2009 | Fit Force Fitness (Northwest Law Enforcement Academy) – 3/2-4/2009 |
| 2009 | Safe Guarding America Symposium – 2/04/2009 |
| 2009 | Rape Aggression Defense (women self defense) |
| 2008 | S.P.E.A.R.S. (Personal Self Defense – 8/15-17/2009) |
| 2008 | Basic Instructor Course (OC Aerosol Projectors) On-line Recertification |
| 2008 | Rape Aggression Defense (women self-defense) |
| 2007 | Taser Instructor (07/23-24/2007) |
| 2007 | Rape Aggression Defense (women self defense) |
| 2006 | Master Use of Force Instructor (#MUFI-06-00015) |

| 2006 | **Basic Instructor Course (OC Aerosol Projectors) ARMOR Training Academy (09/15/2006)** |
|---|---|
| 2006 | Physical Fitness Specialist Cooper Institute (Re- certification) |
| 2006 | **Advanced Force & Control Instructor Seminar** |
| 2006 | **Rape Aggression Defense (women self-defense)** |
| 2005 | **Street Survival Tactical Edge Seminar** |
| 2005 | **SIMUNITION – Scenario Instructor Course (9/20-23/2005)** |
| 2005 | Ethics Orientation on-line training |
| 2005 | **Rape Aggression Defense (women self-defense)** |
| 2004 | **Ethics Train-The-Trainer (Institute for Law Enforcement Administration in Plano, Texas – 40hrs)** |
| 2004 | **Survival Tactics/Ground Fighting Protective Training Services (Instructor, 40hrs)** |
| 2004 | **S.P.E.A.R. Physical Tactics System (40hrs)** |
| 2004 | The Diet Revolution (Institute For Natural Resources, 6 hrs] |
| 2004 | **PPCT Defensive Tactics Instructor (40hrs)** |
| 2004 | Re-certification for Breath Test Operator |
| 2004 | The Indiana Hazardous Materials & Environmental Safety Conference |
| 2004 | **Advance Edge Weapon (16hrs)** |
| 2004 | **Rape Aggression Defense (women self-defense)** |
| 2003 | Physical Fitness Specialist Cooper Institute (40hrs) |
| 2003 | Early Identification System (CALEA) |
| 2003 | Vehicle Tactical Recovery & Apprehension Program (CALEA) |
| 2003 | Indiana Association of Chief's of Police Mid-Winter Conference |
| 2003 | Emergency Medical Technician-Basic Class -Saint Johns Hospital |
| 2002 | **Rape Aggression Defense (women self-defense)** |
| 2002 | Re-certification for Breath Test Operator |
| 2002 | Indiana Association of Chief's of Police Mid-Winter Conference |
| 2001 | I.S.C Criminal Justice Wellness Certification Course (40hrs) |
| 2001 | Trauma Law Enforcement (8hrs) |
| 2001 | Indiana Association of Chief's of Police Mid-Winter Conference |
| 2000 | Science + Practice = Healthy Community Conference |
| 2000 | Indiana Association of Chief's of Police Mid-Winter Conference |
| 2000 | Re-certification for Breath Test Operator |
| 1999 | State Instructor Re-certification (I-78-53-137) |
| 1999 | Indiana Association of Chief's of Police Mid-Winter Conference |
| 1998 | Indiana Association of Chief's of Police Mid-Winter Conference |
| 1997 | Re-certification for Breath Test Operator |
| 1997 | **Police Ethics – (16hrs)** |
| 1996 | State Instructor Re-certification |
| 1992 | Prosecutor's Fall Seminar |
| 1992 | **Monadnock PR-24/Police Baton Instructor Course (40hrs)** |
| 1992 | American With Disabilities Act |
| 1991 | Pursuit Policy Risk Assessment and Legal Consideration |
| 1990 | **Distraction Device (DEF Tech)** |
| 1989 | **Pressure Points Control Tactics Physical Tactics System (Instructor, 40hrs)** |
| 1989 | **Baton Instructor Course (40hrs)** |

2

1989 **Monadnock PR-24 Instructor Course (40hrs)**
1989 Physical Fitness Specialist (40hrs)
1988 **Firearms Instructor Course (40hrs)**
1988 **Semi-Automatic Weaponry Seminar**
1988 **Street Survival '88**
1988 Indiana Law Enforcement Academy Instructor's Course (40hrs)
1983 Advanced Latent Fingerprint Techniques (FBI)
1983 Fingerprint Classification (FBI)
1982 **Street Survival Seminar (Calibre Press, Inc)**
1982 Basic Criminal Investigation
1980 **Law Enforcement Survival Tactics (80hrs)**

**Management Training:**
2002 **Mastering Performance (24hrs, Bill Westfall)**
2002 **Madison County Leadership Academy (56hrs)**
1999 Personality and Leadership (Ivy Tech State College, 0.5 credit)
1999 Criticism and Discipline Skills for Managers
1997 First Line Supervision, Leadership, and Management Skills (24hrs)
1997 Supervision Program (University of Indianapolis, 12hrs)
1997 The Basic of Employment Law
1996 Understanding Personnel Law
1996 Advanced Internal Affairs/Proactive Steps for Corruption Prevention
1996 Internal Affairs Managing Citizen Complaints/Employee Discipline

**Interpersonal/Social Skill Training:**
2010 **ISOA – Conflict Resolution – {5-03-2010}**
2007 **Problem Base Learning {10/30-31/2007} Lasing, MI**
2007 **Verbal Judo: Train-the-Trainer {02-711-2029} Communication Skills**
2002 Racial Profiling and Use of Force
2002 Certificate of Participation {ICADV, 10.75hrs}
2002 How to Handle People with Tact and Skill
2001 Conflict/Confrontational Skills
2000 Science + Practice = Healthy Communities (10.5hrs)
1998 Community Relationship Building Team (16rs)
1999 Acorn to Oak: Realizing Our Potential (ICADV 16hrs)
1999 Juvenile Violence in Our Schools (16hrs)
1998 Character Counts Development Seminar {Josephson Institute of Ethics – 40hrs}
1997 Personnel Needs and Strategies in Community Policing
1995 Development of Cultural Diversity Training: Train-the-Trainer
1994 Alternatives, Inc ADAPT Training
1991 Domestic Violence Strategies of Intervention (Duluth Domestic Abuse Intervention Project, 16hrs)

**EMS/Medical Training:**
2014 **EMT Training - Pipeline**
2013 **Indiana Emergency Response Conference – {08/21-24/2013}**
2013 **EMT Training - Pipeline**

| 2012 | Indiana Emergency Response Conference – {09/13-14/2012} |
| 2012 | Emergency Medicine Symposium – {5/04/2012} |
| 2010 | ARRHYTHMIA/Heart Failure Symposium – {10/08/2010} |
| 2010 | Indiana Emergency Response Conference – {8/12/2010} |
| 2009 | Heart CPR/AED – AHA Exp: {01-31-2015} |
| 2009 | Basic Life Support – American Heart Association Exp.:{01-31-2015} |
| 2009 | EMT-B (PSID: 7393-4128) Expires{06/30/2015} |
| 2007 | FEMA IS-00700 National Incident Management System |
| 2006 | Basic Life Support Instructor (Expiration – 01/31/2008) |
| 2006 | EMT-B (48-55102) |
| 2004 | Indiana Hazardous Materials & Environmental Safety Conference (2 Days Attendance) |
| 2002 | Emergency Medical Technician-Basic Certification (200hrs) Certificate of Completion (St. John's Health Systems) |
| 1994 | Ball Memorial Sports Medicine Lecture Series |
| 1994 | SIDS Training |

**Formal Education:**

| 2003 | Columbia Southern University – {B.S. Criminal Justice, Magna Cum Laude 3.85 GPA} |
| 1978 | Indiana Law Enforcement Academy – (480hrs, 90.30 GPA) |
| 1978 | Chemical Test for Intoxication (40hrs) |
| 1970 | Pendleton Heights High School |

## MANAGEMENT BACKGROUND:

❑ As the Assistant Chief of the Anderson Police Department from January of 1997 to April of 2003, I was responsible and supervised approximately seventy (70) sworn and non-sworn personnel, which included the following divisions: Criminal Investigation, Juvenile Section, Special Services, Records, Dispatch, and the Multi-Agency Drug Task Force.  Additional responsibilities were submitting an annual budget, a year-in-report, and supervisor's evaluations, along with over-seeing the Community Policing Program, D.A.R.E. and Senior Link Program.

❑ I was the Training Coordinator of the Anderson Police Department from April of 1988 to December of 1996. Responsibilities were seeing that all personnel met federal, state, and department training hours guidelines; assisted in establishing policies for accreditation related to training issues; scheduled Pre-Basic Courses; scheduled all testing for police, dispatch, and civilian applicants; served as the internship coordinator; requested and submitted an inventory of all equipment used in Training. In addition, I worked closely with universities in scheduling internships for criminal justice majors.

4

**INSTRUCTOR/TEACHING EXPERIENCE:**

- *Alternatives Incorporated of Madison County contracted me to facilitate the Anderson Domestic Abuse Prevention & Treatment Program (ADAPT) from 1999 to 2001. The program was a 60-hour (15-weeks psycho-educational program for men and women with abusive behavior wanting to learn effective ways to communicate and build healthy relationships based on the "Choice" model (Margy & Denny Hendershot – 1993). The majority of participants were court ordered.*

- Conducted several classes of women's self defense at Anderson University. The curriculum I use is Rape Aggression Defense (RAD), which is a nationally recognized system for women. I have also assisted Plainfield Police Department and Bloomington Police Department with their (RAD) classes.

- Facilitated a 40-hour Intro to Community Policing through the Indiana Regional Educational Center for Community Policing in conjunction with staff from the Tri-State Regional Community Policing Institute in 2005.

- **I have been with the Indiana Law Enforcement Academy as a Staff instructor since April of 2003.  I completed the Master Instructor program, the highest category issued by the Indiana Law Enforcement Training Board in 2008.  My primary duties consist of:**

  - ❖ **Teaching hands-on Physical Tactics,**
  - ❖ **Police Ethics,**
  - ❖ **Interpersonal Communication,**
  - ❖ **Use-of-Force classes for Jail Officers,**
  - ❖ **OIC for the Police Chief Executive Program,**
  - ❖ **OIC for ILEA Fitness Assessment**
  - ❖ **Use-of Force at the Indiana Town Marshal's Conference – 2014 in Lafayette, IN**

    1. **Publication:**
       a. **The research paper for my Master Instructor certification … "Ethics in Law Enforcement" was place on our web page (www.in.gov/ilea) & the IACP NET web page (www.iacpnet.com)**

- *S&G Consulting* started in 2005:
  - *Use-of-Force Consultant*
  - *Physical Tactics/Self-Defense*
  - *Interpersonal Communication*
  - *Police Ethics/Professionalism*
  - *Sexual Harassment*

- *Clients:*

5

**Police Department Agencies:**

- ❖ **Anderson Police Department**

  1. Reviewed use of force Policy

- ❖ **Elwood Police Department:**

  1. Confrontational Communication
  2. Physical Tactics
  3. Sexual Harassment
  4. Ethics/Professionalism

- ❖ **Tipton Police Department**

  1. Domestic Violence

**Companies/Organizations:**

- ❖ **Indianapolis Museum of Art's personnel:**

  1. Physical Tactics,
  2. OC Spray,
  3. Impact Weapons
  4. Confrontational Communication

- ❖ **Behavioral Intervention caseworkers:**

  1. Self-Defense
  2. OC Spray
  3. Confrontational Communication

- ❖ **Alternatives Incorporated of Madison County:**

  1. Self-Defense Lecture

- ❖ **Argosy/Hollywood Casino personnel in Lawrenceburg, IN**
  1. Confrontational Communication
  2. Defensive Tactics

- ❖ **Senator Dan Coats Staff:**

  1. Self-Defense Training - 2013

- ❖ Self-Defense classes at *Anderson University*, *Challenge Your Body Fitness Center* in Noblesville and to *various organizations*.

- ❖ I have taught Domestic Violence to *local police agencies* in Madison County for *Alternatives Incorporated of Madison County*

**USE-OF-FORCE CONSULTANT/EXPERT WITNESS:**

1. Testified as a Use-of-Force Expert Witness in Federal Court...Southern Division in Indianapolis – October 2007 for Collier-Magar & Roberts Law Firm on behalf of Officer Davidson.

2. Use-of-Force Expert Witness in Federal Court...Northern Division in Lafayette – December 2007... Collier-Magar & Robert Firm on behave of Officer Baker. [Adjudicated prior to trial.]

3. Use-of-Force Consultant/Expert for Collier-Magar & Roberts in a Starke County Sheriff Department excessive force case ... Filip and Filip... United States District Court, Northern District of Indiana, South Bend Division... Cause No: 3:08-CV-426 [Settlement prior to trial]

4. Use-of-Force Expert Witness for Collier-Magar & Robert in Blackford County Sheriff Department – Jail officer excessive for case ... [Was contact by Mr. Collier-Magar reference case but no follow-up]

5. Use-of-Force Consultant for City Of Anderson/Anderson Police Department in 2010 reference excessive force case... Cause No: 48D04-1006-CT-01818 [Adjudicated prior to trial].

6. Use-of-Force Expert Witness for Travelers Staff Counsel in a City of Muncie/Muncie Police Department excessive force case ... Cause No: 18C04-0903-CT-0004 [Adjudicated prior to trial].

7. Use-of-Force Expert Witness for Liberty Roberts in Estate of Stewart K. Wolfe v. City of Peru, Indiana; Peru Police Department; and Officer Jason Mooney in his individual capacity... Cause No: 3:11-CV-439-JVB-CAN [Summary Judgment Granted]

8. Use-of-Force Expert Witness for Julie J. Havenith, The Law Officers of Travelers Staff Counsel Office in the Doyle Wright v. Boone County Sheriff P. Campbell in his official capacity, Michael T. Nelson in his official capacity, Anthony Harris in his official capacity and the Boon County Sheriff's Office, Cause No.: 06C01-1111-CT-09 [Settlement reach prior to Trial]

7

9. **Use-of-Force Expert Witness for Kenneth Collier-Magar in Bobby F. Robinson v. Austin Lipps, Michael Black, Chad Porfidio, Brandon Cappa, and Dale Dishmond;** *Untied States District Court,* **Southern District of Indiana, Indianapolis Division, Cause No: 1:12-cv-1170-JMS-MJD [ Settlement reached prior to Trial]**

## BOARD/COMMITTEE MEMBERSHIP:

1. Madison County Step Ahead (1997 to 2000)
   a. Steering Committee
   b. Personnel Committee

2. Alternatives Incorporated of Madison County (1999 to 2003)
   a. Personnel Committee
   b. Project Haven

3. Chemical People Task Force of Madison County (1998-2003
   a. Chair Person (1999-2003)
   b. East Central Regional Advisory Board

4. Anderson Pal Club Board Member (1997 to 2003)

5. Crime Stoppers Board Member (1997 to 2003)
6. Indiana Anti-Car Committee (Advisory Board 1999)

7. Character Counts of Madison County Advisory Board (1999 –2000)

8. Mayor's Commission Against Domestic Violence (2000 – 2003)
   a. Vice-chair - 2003

9. Indiana Tobacco Use Prevention and Cessation Advisory Board
   (Governor Appointment - 2000 – 2004)

10. *The Anderson Pal Club Board Member ... {President} – (2011–2012)*

## PERSONAL DATA:

- ❑  Resident:      Life-long resident of Anderson, Indiana
- ❑  Family: Married to Cathy L (Chase) Guthrie (38 years)
                      Four Children – Steve Jr., Tiffany, Stacie & Matthew
                      Five Grandchildren – Nicholas, Taylor, Devan, McKayla & Clayton
- ❑  Health:       Excellent

- ❑  Organization:  **Member of Christ Lutheran Church**

8

National Physique Committee (2011 to present)
International Law Enforcement Educators and Trainers
Association {ILEETA} (2011 to present)
American Society for Law Enforcement Training (2003-present)
Indiana SWAT officers Association (2010)
AARP (2001 – present)
The International Associations of Lions Club (2002-present)
Riders of ROK Kawasaki (2005 -2009)
Fraternal Order of Police Lodge #48 (1978 – present #00592)
Anderson Noon Lion Club (2002 – 2008)
National Federation High School Association (2003-2004)
Indiana Association of Chiefs of Police (1997-2003)
National Fast Pitch Coaches Association (1994-1999)
Indiana Coaches of Girls' Sport Association (1993-1999)
Indiana High School Baseball Coaches Association (2000- 2003)

- Personal    Dependable, responsible and dedicated
  Qualities:   Detailed oriented
             Well organized and efficient
             Strong communication skills
             Motivated and capable of handling multiple tasks

## COACHING EXPERIENCE:

2000-2003    Frankton High School Head Baseball Coach
                 a.   Accomplishments
                      1. Sectional Championship – (2000 & 2001)

1991-1998    Frankton High School Softball Coach
                 a.   Accomplishments
                      1.   Sectional Championship – (1994,95,96,97&1998)
                           Sectional Runner-up – (1993 & 2003)

                      2.  Regional Championship – (1996)
                           Regional Runner-up – (1999 & 2001)

1996-2000    Frankton Junior High Football Assistant Coach

## PROFESSIONAL CERTIFICATION OR LICENSE:

- <u>Sport License:</u>
  - Indiana High School Athletic Association Softball Official (014938)
  - National Softball Association (NSA) Softball Official (2007)

9

- **Law Enforcement Certification:**
  - Indiana Law Enforcement Academy Staff Instructor
  - State of Indiana Instructor (I-78-53-137)
  - State of Indiana Master Instructor (I.C. 5-2-1-9 & IAC Title 250)
  - Master Use of Force Instructor (#MUFI-06-00015)
  - Rape Aggression Defense (BPD) Instructor
  - PPC Defensive Tactics Instructor – (2004 - 2006)
  - SPEAR Defense Tactics Instructor
  - Survival Tactics Instructor – (2004 - 2006)
  - Ethics Train-The-Trainer
  - Simunition Scenario Instructor – (2005)
  - Firearms Instructor (1988 - present)
  - Verbal Judo Instructor (2007 – 2009)
  - Taser Instructor (2007- 2009)
  - Indiana BAC Data Master Recertification – Certificate # 986666112 - 6-30-2014

- **Personal License:**
  - Indiana Commercial Driver License Class B (Endorsement – PM)
  - Indiana State School Bus Committee Standard Certification
  - Indiana State License to carry handgun (1387768)

- **Medical Certification: … {expired 06/30/2015}**
  - Basic Life Support Instructor
  - EMT-Basic (48 55102)
  - Basic Life Support (CPR/AED) Instructor  (PSID: 7393-4128)

# SECTION III

## Diplomas
### Columbia Southern University
### ILEA – Master Instructor
### ILEA – Basic Training
### Pendleton Heights High School

# Columbia Southern University

By Authority of the Board of Trustees and on recommendation
of the Faculty hereby confers upon

## Steven D. Guthrie

the degree

### Bachelor of Science
### Criminal Justice

With all rights, privileges and honors thereunto appertaining.
In Testimony Whereof, we have affixed our signatures and
the Seal of the University
this twenty-first day of March, two thousand three.





Robert Mayes
President

Nancy Crabb
Registrar

State of Indiana

## Law Enforcement Training Board



# Steve Guthrie

*Indiana Law Enforcement Academy*

*Having achieved all the requirements in the areas of education,
training, and experience prescribed by
I.C. 5-2-1-9 and IAC Title 250 is now declared a*

# Master Instructor

*the highest instructor category issued by the
Law Enforcement Training Board*

*And as such is deemed qualified to act as the principal instructor
in board-approved instructor courses.*

| *Paul Whitesell, Ph.D.* | March 7, 2008 | *Rusty K. Goodpaster* |
|---|---|---|
| **Chairman** | **Date** | **Executive Director** |

# State of Indiana

# Law Enforcement Training Board



## Instructor Certificate

### Awarded To

#### STEVEN D. GUTHRIE, SR.

*who has complied with the minimum qualifications in the areas of education, training and experience, pursuant to IC 1971, 5-2-1-9 and the Boards Administrative Rules, and is qualified to instruct in one or more professional police and/or general subjects.*

_____
CHAIRMAN

_____
EXECUTIVE DIRECTOR



# SECTION
# IV

# Fee Schedule

## <u>FEE SCHEDULE</u>

The following fees listed below are for Steven D. Guthrie… DBA: S&G Consulting for services rendered as a Use-of-Force Expert Witness for the *<u>Altizer v City of Richmond</u>*, <u>et al….United States Southern District Court; Cause No. 1:14-cv-31-WTL-TAB</u>.

### *ALL AMOUNTS ARE IN ADDITION TO MISCELLANEOUS EXPENSES*

| | |
|---|---|
| Initial Telephone Consultation | No Charge |
| Review of Documentation/ Records, Preparation of Report | $150/hour |
| Meeting with Counsel, members of the Police Department involved in litigation, Witness, others involved with the case, Site Visits, etc. | $150/hour |
| Deposition(s) (minimum of 4 hours per day) | $150/hour |
| Trial or Hearing (minimum of 4 hours per day) | $150/hour |
| Travel Time, Portal to Portal (maximum of 8 hours/day) | $ 100/hour |
| Expedite Fee (requested with 7 to 14 days notice) | $300 |
| Expedite Fee (requested with less than 7 days notice) | $600 |
| Cancellation of Deposition, Hearing or Trial with 7 days or less notice | $750 |
| Cancellation of Deposition, Hearing or Trial with 8 to 14 days notice | $500 |
| Cancellation of Deposition, Hearing or Trial with more than 14 days notice | No Charge |